UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL A. CELI, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> TRUSTEES OF PIPEFITTERS LOCAL 537 ) <br> PENSION PLAN and THE PIPEFITTERS ) <br> LOCAL 537 PENSION PLAN, ) <br> ) <br> Defendants. ) <br> ) | Civil Action No. 10-11152-DJC |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                November 28, 2011

### I.     Introduction

Plaintiff Michael Celi ("Celi") brings this action against the Pipefitters Local 537 Pension Plan (the "Plan") and the Trustees of the Pipefitters Local 537 Pension Plan ("Trustees") (collectively, "Defendants"), under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132 *et seq.* and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, seeking a declaratory judgment that the Fund is improperly recovering prior overpayments of disability benefits through a monthly reduction of his retirement benefits. The Defendants and Celi have now both moved for summary judgment. For the reasons set forth below, the Defendants' motion for summary judgment is GRANTED and Celi's motion for summary judgment is DENIED.

## II. Factual and Procedural Background

Unless otherwise noted, the following facts are undisputed.

### A. The Fund

In 1957, Pipefitters Local 537 ("Local 537") and two associations of contractors that performed pipefitting work in the Boston area created the Pipefitters Local 537 Pension Fund ("the Fund"). (Def. Statement of Facts ¶ 2). The Fund is a trust that provides pension benefits to eligible participants pursuant to the Plan. (Def. Statement of Facts ¶¶ 2, 3). Under collective bargaining agreements between Local 537 and the associations of employers working in Local 537's geographic territory, employers are obligated to make contributions to the Fund in specified amounts for every hour of work performed by their employees under the agreement. (Def. Statement of Facts ¶ 4). The Fund finances the pension benefits that it provides to eligible participants with those employer contributions and the returns it earns on the investment of its assets. (Def. Statement of Facts ¶ 5). There are currently approximately 125 employers that regularly contribute to the Fund, over 1,900 active participants and over 900 retirees. (Def. Statement of Facts ¶ 6). The Fund is administered by a Board of Trustees consisting of six individuals, three selected by the employer associations and three by Local 537. (Def. Statement of Facts ¶ 7).

### B. Celi's Disability Pension[1]

Celi is a pipefitter by trade. In October 1990, Celi became disabled due to a back injury sustained while working as a pipefitter. Celi I, 975 F. Supp. at 26; Pl. Statement of Facts ¶ 3. In November 1991, he applied for a "Total and Permanent Disability Pension" under the Plan. Celi

---

[1]This Court relies on the findings of fact by the Court (O'Toole, J.) in Celi v. Trustees of Pipefitters Local 537 Pension Plan, 975 F. Supp. 23 (D. Mass. 1997) ("Celi I"), attached as Exhibit 1 to Celi's statement of undisputed facts.

I, 975 F. Supp. at 26. The Plan entitles an eligible participant found to be "totally and permanently" disabled to retire on a "Total and Permanent Disability Retirement" pension. (Declaration of Charles T. Hannaford, Administrator of the Fund ("CTH Decl."), Ex. 1 at 17-18, § 3.4). The Plan defines "Total Disability" as a "physical or mental condition for which medical evidence has been furnished to the sole satisfaction of the Trustees, which prevents an Employee from engaging in any regular employment in the trade or in any other gainful employment . . . ." CTH Decl., Ex. 1 at 3, § 1.13. "Total and Permanent Disability" is further defined as "Total Disability as conclusively established by the Social Security Administration and as evidenced by the granting of a Social Security Disability award to a disabled employee. Such disability shall prevent an Employee from engaging in any gainful employment" and, "[i]n the absence of a Social Security Disability Award, an Employee who has been denied Social Security disability benefits . . . may file an application with the Trustees and include any such medical evidence of the disability as the Trustees in their sole discretion deem necessary to make a determination of total and permanent disability." CTH Decl., Ex. 1 at 3, § 1.14.

In February 1992, the Plan approved Celi's application for disability benefits. Celi I, 975 F. Supp. at 26; Pl. Statement of Facts ¶ 3; Def. Statement of Facts ¶ 16. In July 1993, the Trustees sent a notice to all disability pensioners, including Celi, informing them that disability pension payments would be discontinued if they returned to work or had sufficiently recovered from their disability so that they were able to return to any gainful employment and it further requested each recipient to notify the Trustees if he or she was currently employed, noting that not all employment would necessarily disqualify a recipient from receiving a disability pension. Celi I, 975 F. Supp. at 26; Def. Statement of Facts ¶ 17.

In January 1994, without notifying the Fund, Celi began to work as a real estate agent. (Def.

3

Statement of Facts ¶ 18). In July 1995, the Trustees became aware of Celi's employment and terminated his disability pension on the basis that he was no longer totally and permanently disabled. (Def. Statement of Facts ¶ 19). Celi appealed the termination and after a hearing before the Trustees in October 1995, the Trustees denied Celi's appeal. Celi I, 975 F. Supp. at 26; Def. Statement of Facts ¶ 20.

### C. Appeal of the Trustees' Decision to Terminate Celi's Disability Pension

In February 1996, Celi brought an action in this Court against the Fund and the Trustees claiming, among other things, that the Trustees' termination of his disability pension violated the terms of the Plan. Celi I, 975 F. Supp. at 28. The Fund counterclaimed for restitution of the disability pension benefits in the amount of $24,310.50 it had overpaid Celi. Id. On July 28, 1997, after a bench trial, the Court (O'Toole, J.) upheld the Trustees' decision and ordered that judgment be entered for the Fund in the amount of $26,273.41 ($24,310.50 plus prejudgment interest). Id. at 29; Pl. Statement of Facts, Ex. 3 (judgment).

### D. Bankruptcy Proceedings

Five months later, Celi and his wife filed for Chapter 7 bankruptcy. (Compl. ¶ 12). On March 18, 1998, the Fund filed a "proof of claim" in the bankruptcy proceeding for the amount of the judgment awarded by this Court on July 28, 1997. Pl. Statement of Facts, Ex. 5 (proof of claim). In connection with its proof of claim, the Fund asserted a "right of recoupment of overpayments made incorrectly" to Celi which the Fund stated was approved by the Court in Celi I, 975 F. Supp. 23, from Celi's vested, beneficial interest in the same Plan or, in the alternative, "a right to setoff." Pl. Statement of Facts, Ex. 5. Celi filed an objection to Defendants' proof of claim. (Pl. Statement of Facts, Ex. 6 (order of bankruptcy court)).

On June 23, 1998, the bankruptcy court ordered that all Celi's dischargeable debts be

discharged. (Pl. Statement of Facts, Ex. 7 (bankruptcy court's discharge order)). The bankruptcy court held a hearing on September 9, 1998 on Celi's objection to the Fund's proof of claim and issued an order stating that "[t]he Court abstains from further consideration, with the parties' rights fully reserved, since this is a no asset case and the res in dispute is not property of the estate." Pl. Statement of Facts, Ex. 6. Celi did not appeal this order.

### E. Celi's Subsequent Retirement

More than ten years later, in January 2009, Celi contacted the Fund to inquire about applying for a pension under the "Normal Retirement" provisions of the Plan. (CTH Decl., Exs. 1, 2; Pl. Statement of Facts, Ex. 10 (Trustees' February 18, 2009 letter)). On February 18, 2009, the Fund notified Celi that he owed the Fund $49,075.10 ($26,273.41 judgment in Celi I plus postjudgment interest) and that if he did not repay the Fund before he began receiving retirement pension payments, the Fund would recoup that amount by deducting 20% of each monthly pension payment until the entire amount was satisfied. (Pl. Statement of Facts, Ex. 10). Celi appealed that decision on October 16, 2009 and requested a determination by the Trustees that Celi was entitled to receive his "Normal Retirement" pension without setoff for the previous judgment. (CTH Decl. ¶ 17, Exs. 2, 4). As that appeal was pending, Celi applied for "Normal Retirement" pension benefits on February 1, 2010. (CTH Decl. ¶ 19). Five months later, on July 7, 2010, the Trustees denied Celi's appeal from the Fund's decision to recoup the overpayments. (CTH Decl. ¶ 20, Ex. 5; Pl. Statement of Facts, Ex. 11).

### F. The Instant Action

On July 9, 2010, Celi filed the instant complaint challenging the Trustees' denial of his appeal of the Fund's decision to deduct a portion of his monthly pension benefit payments to recover overpayments of his disability benefits. (D. 1). The complaint seeks declarations pursuant to the

Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq*. and 29 U.S.C. § 1132 *et seq*., that the Trustees' reduction of Celi's pension benefits is barred by the bankruptcy discharge and that he is entitled to unreduced monthly retirement pension payments. (D. 1, ¶¶ 30-33). After the parties conducted expedited discovery, each moved for summary judgment, (D. 13, 18), and the Court heard oral argument on these motions.

## III. Discussion

### A. Standard of Review

Where an ERISA plan administrator or fiduciary is granted clear discretionary authority to determine eligibility for benefits or to construe the terms of the plan, Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Rodriguez-Abreu v. Chase Manhattan Bank, N.A., 986 F.2d 580, 583 (1st Cir. 1993), such discretionary decisions must be upheld "unless it is arbitrary, capricious or an abuse of discretion." Wright v. R.R. Donnelley & Sons Co. Group Benefits Plan, 402 F.3d 67, 74 (1st Cir. 2005) (internal quotation marks and citation omitted). The arbitrary and capricious standard of review is deferential; that is, "the administrator's decision must be upheld if it is reasoned and supported by substantial evidence." Gannon v. Metro. Life Ins. Co., 360 F.3d 211, 213 (1st Cir. 2004) (citation omitted). "Evidence is substantial if it is reasonably sufficient to support a conclusion, and the existence of contrary evidence does not, in itself, make the administrator's decision arbitrary." Id.

As the Court (O'Toole, J.) previously found in Celi I, section 8.1(d) of the Plan involved here grants the Trustees clear discretionary authority to interpret the terms of the Plan. 975 F. Supp. at 27 (finding that the Plan provided the Trustees with such discretion and concluding that the Trustees' interpretation of the Plan to terminate Celi's disability benefits was not arbitrary or capricious). Section 8.1(d) provides, in relevant part, that the duties of the Trustees shall include

6

"[d]etermination of any question arising in connection with the interpretation, application, or administration of the Plan...and their decisions or actions in respect thereof shall be conclusive and binding upon any and all parties, including Participants, former Participants, Employers and the Union." Celi does not appear to dispute that section 8.1(d) of the Plan grants the Trustees such discretionary authority, see generally Pl. Memo & Pl. Opp, as he concedes as a general matter that the deferential standard applies. See Pl. Opp. at 2. Accordingly, the arbitrary and capricious standard of review applies here.

> B. **The Plan Authorizes the Fund to Reduce Celi's Monthly Retirement Pension Payments to Recoup Disability Pension Overpayments**

In denying Celi's appeal, the Trustees relied on sections 5.9(d) and 11.10 of the Plan, claiming that "both [sections] expressly permit the deduction [of Celi's monthly pension payments to recover the prior disability benefit overpayments to him]." (Pl. Statement of Facts, Ex. 11). Section 5.9(d) of the Plan (effective as of March 1, 2001) provides, in pertinent part:

> If . . . an Employee received pension payments for any month in which he was not entitled to such payments, the initial payment upon his subsequent retirement shall be reduced by an overpayment. Any remaining overpayment shall be repaid by reducing future payments by up to 25 percent of such future payment until such overpayment is repaid in full.

CTH Decl., Ex. 1 at 39.[2]

By its express language, section 5.9(d) authorizes the Fund to recoup overpayments of pension payments by reducing future retirement payments by up to 25 percent where a participant receives benefits under the Plan to which he is not entitled. That is precisely what the Fund did here.

---

[2]This language is identical to that in section 5.9(d) in the 1991 version of the Plan proffered by Celi. (Pl. Statement of Facts, Ex. 8 at 38).

Celi was overpaid "pension payments" in the form of disability pension payments to which he was not entitled and upon his "subsequent retirement" in 2010, the Fund decided to reduce his retirement pension payments by 20% each month until the overpayments are repaid. See Pl. Statement of Facts, Ex. 10. Celi contends that the phrase "pension payments" in section 5.9(d) refers solely to retirement pension payments, not disability pension payments, and that, as a result, section 5.9(d) does not grant the Trustees the authority to reduce Celi's retirement pension payments due to overpayments of his disability pension. Celi applied for and received "Total and Permanent Disability Retirement" pension payments under section 3.4 of the Plan which were overpaid to Celi when he failed to notify the Fund of his employment as a real estate agent. In section 3.4, the "Total and Permanent Disability Retirement" pension is referred to as a "disability pension." CTH Decl., Ex. 1 at 17-18, § 3.4. In sections 3.1 and 4.1 of the Plan, the "Normal Retirement" pension for which Celi applied refers to "Normal Retirement" as a "normal retirement pension." CTH Decl., Ex. 1 at 14, § 3.1. Thus, whether the "pension" is a "normal retirement pension" or "disability pension" provided under the Plan, it is reasonable to interpret the term "pension payments" in section 5.9(d) as referring to both retirement and disability pensions. These pensions are governed by different sections of the same Plan. The payments made to participants for these pensions derive from a single source - the Fund. It is therefore certainly reasonable to interpret the phrase "pension payments" in section 5.9(d) as including these "disability pension" payments the Fund overpaid to Celi.

Celi further argues that section 5.9(d)(I) prohibits the Fund from reducing retirement pension payments to recover the disability pension overpayments previously made to him. Pursuant to section 5.9(d)(I), "[i]f an Employee is re-employed after having retired on a Total and Permanent Disability Retirement Pension, there shall be no adjustment of his subsequent pension due to prior

8

pension payments received, whether such payments were paid on the Regular Form or the Husband-and-Wife Form." CTH Decl., Ex. 1 at 40; Pl. Statement of Facts, Ex. 8 at 38-39. The Trustees read this section as applying to participants who receive early disability retirement payments to which they are entitled, but whose benefits are terminated in a timely manner upon re-employment. The Court finds this to be a reasoned interpretation of section 5.9(d)(I) in the context of the entire Plan. Whereas section 5.9(d)(I) makes no mention of overpayments of pension payments, section 5.9(d), upon which the Trustees relied in denying Celi's appeal, squarely addresses recouping overpayments of pension payments from a participant. Accordingly, the Court finds that the Trustees' interpretation of section 5.9(d) and consequent decision to permit recoupment of disability pension overpayments from Celi by reducing his retirement pension payments was not arbitrary or capricious.

In light of the Trustees' reasoned interpretation of section 5.9(d), which alone allows the Fund to recoup overpayments of disability pension payments by reducing retirement pension payments, Celi's challenge to the Trustees' additional reliance on section 11.10 in denying his appeal does not alter the Court's analysis. In 2009, the Trustees amended the Plan to include section 11.10, which provides that "[t]he Trustees have the right to recover any overpayments of benefits or mistaken payments regardless of the extent to which the error in making the payment was the fault of the Fund Office or the Trustees. The right to recover include the use of any lawful means, and includes recoupment from future benefit payments." Pl. Statement of Facts, Ex. 9 (Seventh Amendment to the Plan). Section 11.10 is more expansive than section 5.9(d). Whereas section 5.9(d) provides for recoupment from future payments of "pension payments for any month in which he was not entitled to such payments," CTH Decl., Ex. 1 at 39, section 11.10 states that the Fund may recoup from future payments "overpayments of benefits or mistaken payments" regardless

9

of whether the error was made by the Fund Office or the Trustees. Pl. Statement of Facts, Ex. 9. Thus, section 11.10 broadens the circumstances under which the Fund may recoup overpayment of pension benefits, including overpayments caused by miscalculations or errors by the Fund itself.

Celi's assertion that the Trustees' adoption of section 11.10 in 2009 was intended to reduce Celi's retirement pension payments in violation of ERISA's anti-cutback provision, 29 U.S.C. § 1054(g)(1)[3] is based on his reading of section 5.9(d) of the Plan which, as discussed above, this Court rejects. Celi interprets section 5.9(d) as granting the Fund the right to recoup overpayments of retirement pensions only, not disability pensions and argues that section 11.10 is the only section that allows the Fund to recoup overpayments of all pension payments, including disability pension payments. However, the Court has found reasonable the Trustees' interpretation of section 5.9(d) as granting the Fund the right to recoup disability pension overpayments by reducing Celi's retirement pension payments. The fact that the Trustees amended the Plan to include section 11.10, even if it did so contemporaneously with Celi's inquiry about his normal retirement benefits, see Pl. Memo. at 10, does not change the authority already granted to them under section 5.9(d).

### C. The Fund's Right to Recoup the Overpayments Was Not Discharged or Otherwise Affected by the Bankruptcy Proceeding

Celi argues that since Defendants' unsecured judgment for $26,273.41 from this Court in Celi I, was subsequently discharged per the bankruptcy court's discharge order, their claim to recover disability pension overpayments is forever extinguished.

As both parties acknowledge, the First Circuit has recognized a creditor's right to recoup pre-

---

[3]Section 1054(g)(1) states that "[t]he accrued benefit of a participant under a plan may not be decreased by an amendment of the plan. . . ."

bankruptcy petition overpayments from post-petition obligations to a debtor. See, e.g., Slater Health Center, Inc. v. United States, 398 F.3d 98, 105 (1st Cir. 2005); In re Holyoke Nursing Home, Inc., 372 F.3d 1, 4-5 (1st Cir. 2004). In this Circuit, recovery of overpayments constitute transactions in the "nature of recoupment," unaffected by bankruptcy proceedings, if the debt owed to the creditor arises out of the "same transaction" as the debt the creditor owes the debtor. In re Holyoke, 372 F.3d at 3. Here, the debt Celi owes the Fund (overpayments of disability pension) and the debt the Fund owes Celi (retirement pension payments) arise out of the same contract – the Plan. See, e.g., In re Hiler, 99 B.R. 238, 241-42 (Bankr. D.N.J. 1989) (finding that the plaintiff had a right of recoupment against the debtor where plaintiff's claim for reimbursement for overpayment arose out of the same benefits plan under which debtor asserted entitlement to benefits). Under section 5.9(d) of this Plan, the Fund has a right to recoup disability pension overpayments by reducing Celi's retirement pension payments. The bankruptcy discharge order did nothing to alter that right. See, e.g., Eissa v. Aetna Life Ins. Co., 2010 WL 4942131, at *2-4 (D. Kan. Nov. 30, 2010) (holding that insurer of disability benefits plan had right to recoup overpayment from future benefit payments notwithstanding debtor's bankruptcy discharge); Brown v. Gen. Motors Corp., 152 B.R. 935, 938 (W.D. Wis. 1993) (concluding that plaintiff's bankruptcy discharge had no effect on the pension's plan right to recoup overpayments from future benefit payments in part because the right of recoupment does not constitute a claim under 11 U.S.C. § 101(5)) and its assertion is not a "debt"); see also In re Hiler, 99 B.R. at 245 (finding that a benefit's plan's right to recoup overpayments from future benefits could not be discharged in the participant's bankruptcy proceeding); In re Lord, 284 B.R. 179, 181 (Bankr. D. Mass. 2002) (holding that a disability insurer's recoupment of prepetition overpayments by withholding postpetition benefits from a participant who failed to inform the insurer of social security disability payments that, under the Plan, would have reduced

the amount of his disability benefits, did not violate the automatic stay in the participant's Chapter 7 bankruptcy proceedings).[4] To find that Celi should retain payments not due to him under the Plan due to bankruptcy proceedings would frustrate the purpose of ERISA, namely "protect[ing] the interest of employees by ensuring that they receive[] the pension benefits to which they [are] entitled," Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan, 221 F.3d 1235, 1241-42 (11th Cir. 2000) (citing 29 U.S.C. § 1001); Patterson v. Shumate, 504 U.S. 753, 764 (1992), not Celi, who improperly received disability pension overpayments which the Fund is attempting to recoup.

To the extent Celi argues, without citing any authority, that the Fund has no right to recoup disability pension overpayments under the Plan because they "[took] themselves out of [ ] ERISA," Hearing Tr. 36:15-21, when they asserted their rights in Celi I and received an unsecured judgment in that case, his argument is unavailing. Celi's complaint seeks relief under ERISA and asserts that this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 based on ERISA. (Compl. ¶ 4). Celi cannot claim that Defendants have taken themselves and their claims outside of ERISA, while at the same time seek relief under the same statutory scheme. Moreover, the mere fact that the Trustees asserted a counterclaim for restitution in Celi I in response to Celi's lawsuit, should not put them in a worse position than if they had taken no action on their own behalf. That the Fund neither appealed the bankruptcy court's order nor otherwise pursued a declaration for recoupment and security interest in 1997 regarding its right to recoup these overpayments is also besides the

---

[4] The Court's conclusion that the Fund's right to recoup disability pension overpayments from retirement pension payments was not discharged or otherwise affected by the bankruptcy court proceedings is also consistent with the bankruptcy court's order regarding Celi's objection to Defendants' proof of claim. The bankruptcy court declined to render a decision on the proof of claim and expressly recognized that the parties' rights with respect to this dispute were "fully reserved." Pl. Statement of Facts, Ex. 6.

point since the Plan, in and of itself, authorizes recoupment of disability pension overpayments by reducing monthly retirement pension payments made to Celi until the overpayment amount is repaid.

Moreover, to the extent the Court had any concern regarding fair notice to Celi about the Fund's intent to continue to claim recoupment of the disability pension overpayments, Celi had sufficient notice at several junctures over the years that the Fund was actively pursuing its right to recoup these overpayments. First and most significantly, as discussed above, the Plan itself expressly allows the Trustees to recover such overpayments. Second, the Trustees' counterclaim in Celi I; the Trustees' "proof of claim" to which Celi objected in the bankruptcy proceedings; and the bankruptcy court's September 1998 order stating that the rights of the parties were "fully reserved" with respect to that proof of claim all kept Celi apprised of the Fund's intent (and the likelihood that it could continue to attempt) to recoup overpayments of the disability pension benefits that Celi had previously received.

Accordingly, the bankruptcy discharge order did not extinguish the Defendants' right to recoup the disability pension overpayments made to Celi under the Plan.

## IV. Conclusion

For the foregoing reasons, the Defendants' motion for summary judgment is GRANTED and Celi's motion for summary judgment is DENIED.

**So ordered.**

/s/ Denise J. Casper
United States District Judge